UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM DRAKE,<br><br>            Plaintiff,<br><br>    v.<br><br>SCOTT KERNAN, et al.,<br><br>            Defendants. | Case No.: 1:17-cv-01500-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS<br><br>[ECF No. 26] |

Plaintiff Sam Drake is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's first amended complaint, filed February 9, 2018.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.
## COMPLAINT ALLEGATIONS

Plaintiff names G. Navarro (correctional officer), M.D. Gonzales (correctional officer), Kathleen Allison (Director of California Department of Corrections and Rehabilitation [CDCR]), Brian Moak (Chief of Classification Services at CDCR), C. McCabe (Chief Surgeon at Corcoran State Prison), and M.V. Sexton (Chief Deputy Warden at Corcoran State Prison) as Defendants.

In 1994, Plaintiff was remanded to the custody of CDCR. In June 2000, Plaintiff was a witness in a United States District Court and testified against CDCR and Corcoran State Prison corruption among prison staff.

Defendants Navarro, Gonzales, Allison, Moak, Sexton and McCabe agreed on a course of treatment to injure and oppress Plaintiff.

///
///

1        On April 6, 2015, Defendants Navarro and Gonzales conspired to murder and inflict serious bodily injury on Plaintiff. Plaintiff was randomly moved from the security housing unit at Corcoran State Prison 4A facility to 4A2L where Defendants Navarro and Gonzales were posted.

      On April 6, 2015 through May 2015, Plaintiff wrote requests complaining about the lack of in-cell air circulation, bedding, linen, and sink sanitation. Plaintiff did not receive a response to his requests.

      On April 23, 2015, under the auspice of enforcing CDCR security check, Gonzales stated in front of general population inmates that Plaintiff was a "SNY" "piece of shit" "rat" who has "been 'snitching' on us to the sergeant."

      On May 5, 2015, Navarro called Plaintiff a "snitch" in front of general population inmates and stated: "Drake, in cell #48, keeps snitching on us [guards] to the sergeant and captain…writing complaints," and "if you guys (e.g. black inmates) don't handle it, we are going to handle it!" In addition, Gonzales called Plaintiff a "snitch" "SNY," "piece of shit" in front of the general population inmates.

      On May 20, 2015, Defendants Gonzales and Navarro took Plaintiff from cell #48 to a hallway holding cage/cell to collect a urine sample from Plaintiff under the threat of discipline. Plaintiff told Defendants Gonzales and Navarro that he "filed a 602 against the Warden for his wasting human-resources by unnecessarily repeatedly drug-testing [him], a non-user because it is harassment." Defendant Gonzales, without notice, left the 2 on one 1 escort, after hearing Plaintiff speak of having filed a staff complaint. After Plaintiff provided a urine sample and was placed in a rotunda holding cage, Plaintiff asked Navarro, "Why am I not being taken back to my cell?" Navarro told Plaintiff "you have to wait here until my partner Gonzales is done searching your cell." Gonzales remained in Plaintiff's cell for approximately thirty to forty minutes, ransacking Plaintiff's property then returned to the rotunda with two fifty-gallon trash bags and refused to disclose the contents. When Plaintiff asked what items were taken, Gonzales stated, "you had a lot of trash! Just stand there and shut the fuck up! I read your legal papers, and what you write isn't worth shit! You are not on my level yet, I know exactly what to say in court to win!" Gonzales further stated, "Oh, if you want to see 'personal,' I will get you struck-out! I have already gotten four prisoners life sentenced and I'll be glad to make

you the fifth!" Gonzales then told Plaintiff to "turn around and cuff-up…if you so much as look at me, I will slam you onto the floor head first!"

On May 21, 2015, Gonzales threatened to charge Plaintiff for the lost state linen held taken from a different prisoner's cell on May 20, 2015, if Plaintiff filed an inmate grievance regarding the search of his cell.

On May 21, 2015 and May 28, 2015, Gonzales filed two retaliatory Rule Violation Reports (RVR) against Plaintiff regarding the May 20, 2015 escort. Gonzales accused Plaintiff of destroying state property and willfully resisting and delaying a peace officer in the performance of his duties.

On May 28, 2015, June 15, 2015, and June 18, 2015, Gonzales attempted to lure Plaintiff out of his cell to be attacked during the night shift, and Plaintiff was unable to exit his cell for shower on these dates.

On June 23, 2015, Gonzales intimidated/threatened use of force against Plaintiff stating, "Do you want a problem! Make sure you spell my name correct, it won't be the first time I've been to court!" On this same date, Plaintiff requested that different officers escort him from library to 4A2L.

On June 24, 2015, Defendants Navarro and Gonzales threatened to serve Plaintiff contaminated food.

On June 25-June 28, July 2, July 12, July 21, and July 23, 2015, Gonzales renewed his food poisoning threat stating, "You haven't seen anything yet, I haven't even started yet, this is only the beginning!"

On June 28, 2015, Gonzales told Plaintiff to prepare for the RVR hearing, and then told Plaintiff "wait, let me go see of the Lt. wants to deal with this shit." Gonzales falsely told the Lieutenant that he "refused to attend" the hearing. Plaintiff was not allowed to attend the RVR hearing, and Gonzales posted a disciplinary penalty sign on his cell door and took his television.

On June 29-30, 2015, Defendants Gonzales and Navarro disciplined Plaintiff outside of the disciplinary process by extending his penalty absent authorization of a disciplinary order.

On July 7, 2015, Gonzales threatened to pepper spray Plaintiff in the face when Plaintiff was transported from the law library to his cell unit.

4

On July 21, 2015 and July 23, 2015, Defendants Navarro and Gonzales repeatedly threatened to serve Plaintiff contaminated food.

On September 5, 2015, Defendant Gonzales stood at the Plaintiff's cell door and stated: "You have an 'R' suffix in your file right? What does the 'R' stand for? You are a sex-offender. My job here is to make the life of pieces of shit like you miserable!"

On September 8, 2015, Gonzales attempted to lure Plaintiff out of his cell to subject him to an assault/battery, and when Plaintiff declined, Gonzales stated: "That's too bad because it was going to be a long trip to nowhere!" On this same date, Plaintiff wrote an emergency plea for help to the sergeant and the sergeant agreed to move Plaintiff to a different building.

On January 23, 2016, Gonzales threatened to have Plaintiff assaulted once he was released from segregation. Gonzales has a history of conspiring and targeting prisoners for violent attacks and retaliation.

On September 27, 2016, under the auspice of enforcing CDCR feeding regulation and to further the conspiracy, Navarro gave Plaintiff contaminated food. The following day, Plaintiff suffered severe abdominal pain, dysentery, and vomiting from consuming the food.

On October 6, 2016, Defendant Sexton directed staff not to amend or correct any of the false or incomplete safety/enemy placement case factor information in Plaintiff's central file, and directed Defendant McCabe to dispute all of the injuries Plaintiff reported to the medical department.

On December 29-30, 2016, to further the conspiracy and under the auspices of enforcing CDCR feeding regulations, Navarro carried out the earlier threats and issued Plaintiff food heavily laden-tainted with odorless, nonvisible, and unknown contaminated substances. After consuming the food Plaintiff received from Navarro, he suffered nausea, vomiting, dysentery, acute pain in stomach and spleen, and swollen and hyper pigmented feet and ankles. Plaintiff reported the food poison exposure to custody, food service, and medical staff on January 1, 5, and 27, 2017. Plaintiff has suffered serious bodily injury inflicted by Navarro for approximately eight months.

In March 2017, Defendant Allison agreed to place Plaintiff in the general population where Defendants Navarro and Gonzales were posted. Defendant Allison had a meeting with Defendants Moak and Sexton to circumvent the Ashker settlement agreement terms and amend the CDCR

prisoner placement regulations without appropriate notice. Defendant Allison also directed Defendants Moak and Sexton to disallow Plaintiff to attend the DRB placement review, and to erase all of Plaintiff's safety concerns following the Ashker monitoring conclusion thereby subjecting Plaintiff to attack by other prisoners.

In March 2017, Defendant Moak directed his subordinate counselors to conduct the pre-DRB interview without recording any of Plaintiff's statements, to not document any of Plaintiff's placement safety enemy concerns, to tell Plaintiff that he would be attending his DRB review, and to submit the false interview report as a chrono disputing Plaintiff's safety placement restriction in support of Defendant Sexton's actions. Defendant Allison signed over placement jurisdiction to Defendant Sexton.

In March 2017, Defendant McCabe directed his subordinate healthcare staff to refer Plaintiff to the mental health department for any reports of employee attacks or contamination of food and disputed Plaintiff's injuries stemming from exposure to contaminated food.

On June 26, 2017, Plaintiff submitted an inmate appeal. On June 29, 2017, a video interview was conducted.

## III.
## DISCUSSION

### A. Conspiracy

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001).

Viewing Plaintiff's allegations liberally, Plaintiff states a cognizable claim for conspiracy by Defendants Navarro, Gonzales, Allison, Moak, McCabe and Sexton for the mistreatment he allegedly received because of his status as a sex-offender.

///
///
///

### B. Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040. Plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall on inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

Viewing Plaintiff's allegations liberally, as this Court must at the pleading stage, Plaintiff states a cognizable claim for failure to protect against Defendants Navarro, Gonzales, Allison, Moak, McCabe and Sexton.

### D. Contaminated Food

Adequate food is a basic human need protected by the Eighth Amendment. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). While prison food need not be tasty or aesthetically pleasing, it must be adequate to maintain health. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. (citing Hamm v. DeKaib County, 774 F.2d 1567, 1575 (11th Cir. 1985)).

Based on Plaintiff's allegations in the complaint, Plaintiff states a cognizable claim against Defendants Navarro and Gonzales for intentionally serving him contaminated food in violation of the Eighth Amendment.

**C.     Confiscation of Property**

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 5563 (1974), and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized, intentional deprivations of property are actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, the Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). Plaintiff has an adequate post-deprivation remedy under California law and therefore, he may not pursue a due process claim arising out of the unlawful confiscation of his personal property. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895).

In this instance, Plaintiff has alleged an unauthorized deprivation of his television, and Plaintiff has an adequate post-deprivation remedy under California law and therefore, he may not pursue a due process claim arising out of the unlawful confiscation of his personal property. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895). Accordingly, Plaintiff fails to state a cognizable constitutional claim based on the confiscation of his television.

**D.     False Accusations/Due Process Violation**

Plaintiff alleges that Defendant Gonzales falsely charged him with possession of contraband. The issuance of a false charges does not, in and of itself, support a claim under section 1983. See, e.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary

charges.") (citing Chavira v. Rankin, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d. Cir. 1986)).

However, Plaintiff may not be deprived of a protected liberty interest without the protections he is due under federal law. With respect to placement in administrative segregation, due process requires only that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons for considering segregation, and allow the prisoner to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (quotation marks omitted). Prisoners are not entitled to detailed written notice of charges, representation by counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation. Toussaint, 801 F.2d at 1100-01 (quotation marks omitted). Further, due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation. Id. (quotation marks omitted).

In this instance, Plaintiff contends that Defendant Gonzales improperly reported that he declined to attend the hearing on the rules violation report, thereby subjecting him to a due process violation. Accordingly, Plaintiff states a cognizable due process claim against Defendant Gonzales.

**E.     Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an

inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Based on Plaintiff's allegations that they were subjecting him to potential assault by other inmates because he previously filed complaints against officers, Plaintiff states a cognizable claim for retaliation against Defendants Gonzales and Navarro.

### F. Declaratory Relief

Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

### G. Appointment of Counsel

In the relief section of the complaint, Plaintiff requests the appointment of counsel.

Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require any attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

///
///
///

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

The test for exceptional circumstances requires the Court to evaluate the Plaintiff's likelihood of success on the merits and the ability of the Plaintiff to articulate his claims pro se considering the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. In the present case, the Court does not find exceptional circumstances to warrant the appointment of counsel. Accordingly, Plaintiff's motion for appointment of counsel will be DENIED without prejudice.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed against Defendants Navarro, Gonzales, Allison, Sexton, Moak, and McCabe for conspiracy and failure to protect, and against Defendants Navarro and Gonzales for serving contaminated food and retaliation, and against Defendant Gonzales for a due process violation;

2. Plaintiff's due process allegation regarding false allegations and confiscation of his television and request for declaratory relief be dismissed for failure to state a cognizable claim for relief;

3. Plaintiff's request for appointment of counsel be denied; and

4. The matter be referred back to the undersigned for initiation of service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __May 9, 2018__

UNITED STATES MAGISTRATE JUDGE