UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM DRAKE,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>    Defendants. | Case No.: 1:17-cv-01500-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BE GRANTED<br><br>[ECF No. 25] |

Plaintiff Sam Drake is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for judgment on the pleadings, filed May 13, 2019.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding on the following claims: (1) retaliatory food poisoning under the First and Eighth Amendment against Defendants Navarro and Gonzalez; (2) due process violation relating to a RVR hearing under the Fourteenth Amendment against Defendant Gonzalez; (3) conspiracy to set him up for attack by other inmates against Defendants Allison, Gonzalez, Moak, McCabe, Navarro, and Sexton; (4) for setting him up for attack under the Eighth Amendment against Defendants Allison,

Gonzalez, Moak, McCabe, Navarro, and Sexton; and (5) lack of medical treatment provided in response to his complaints of food poisoning against Defendant Dr. McCabe.

On December 19, 2018, Defendants filed an answer to the second amended complaint.

On December 27, 2018, the Court issued the discovery and scheduling order.

As previously stated, on May 13, 2019, Defendants Allison and Moak filed a motion for judgment on the pleadings claiming the conspiracy claim against them is unexhausted on the face of the complaint. Plaintiff filed an opposition on May 24, 2019, and Defendants filed a reply on June 10, 2019. Therefore, Defendants' motion is deemed submitted for review without oral argument.

## II.

## DISCUSSION

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for "judgment on the pleadings" after the pleadings are closed. The only difference between a motion under Rule 12(c) and a motion under Rule 12(d)(6) is the time of filing, but they are otherwise functionally the same. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, the Court applies the same standard applicable to a motion to dismiss under Rule 12(b)(6) to a motion for judgment on the pleadings under Rule 12(c). "A judgment on the pleading is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law." Lyon v. Chase Bank USA, N.A., 656 F.3d 877, 883 (9th Cir. 2011) (quoting Dunlap v. Credit Prot. Ass'n, L.P., 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam)).

### B.  Allegations of Complaint

In 1994, Plaintiff was remanded to the custody of CDCR. In June 2000, Plaintiff was a witness in a United States District Court and testified against CDCR and Corcoran State Prison corruption among prison staff.

Defendants Navarro, Gonzalez, Allison, Moak, Sexton and McCabe agreed on a course of treatment to injure and oppress Plaintiff.

2

On April 6, 2015, Defendants Navarro and Gonzalez conspired to murder and inflict serious bodily injury on Plaintiff.  Plaintiff was randomly moved from the security housing unit at Corcoran State Prison 4A facility to 4A2L where Defendants Navarro and Gonzalez were posted.

On April 6, 2015 through May 2015, Plaintiff wrote requests complaining about the lack of in-cell air circulation, bedding, linen, and sink sanitation.  Plaintiff did not receive a response to his requests.

On April 23, 2015, under the auspice of enforcing CDCR security check, Gonzalez stated in front of general population inmates that Plaintiff was a "SNY" "piece of shit" "rat" who has "been 'snitching' on us to the sergeant."

On May 5, 2015, Navarro called Plaintiff a "snitch" in front of general population inmates and stated: "Drake, in cell #48, keeps snitching on us [guards] to the sergeant and captain…writing complaints," and "if you guys (e.g. black inmates) don't handle it, we are going to handle it!"  In addition, Gonzalez called Plaintiff a "snitch" "SNY," "piece of shit" in front of the general population inmates.

On May 20, 2015, Defendants Gonzalez and Navarro took Plaintiff from cell #48 to a hallway holding cage/cell to collect a urine sample from Plaintiff under the threat of discipline.  Plaintiff told Defendants Gonzalez and Navarro that he "filed a 602 against the Warden for his wasting human-resources by unnecessarily repeatedly drug-testing [him], a non-user because it is harassment." Defendant Gonzalez, without notice, left the 2 on one 1 escort, after hearing Plaintiff speak of having filed a staff complaint.  After Plaintiff provided a urine sample and was placed in a rotunda holding cage, Plaintiff asked Navarro, "Why am I not being taken back to my cell?" Navarro told Plaintiff "you have to wait here until my partner Gonzalez is done searching your cell."   Gonzalez remained in Plaintiff's cell for approximately thirty to forty minutes, ransacking Plaintiff's property then returned to the rotunda with two fifty-gallon trash bags and refused to disclose the contents.  When Plaintiff asked what items were taken, Gonzalez stated, "you had a lot of trash! Just stand there and shut the fuck up! I read your legal papers, and what you write isn't worth shit! You are not on my level yet, I know exactly what to say in court to win!"  Gonzalez further stated, "Oh, if you want to see 'personal,' I will get you struck-out! I have already gotten four prisoners life sentenced and I'll be glad to make

3

you the fifth!" Gonzalez then told Plaintiff to "turn around and cuff-up…if you so much as look at me, I will slam you onto the floor head first!"

On May 21, 2015, Gonzalez threatened to charge Plaintiff for the lost state linen held taken from a different prisoner's cell on May 20, 2015, if Plaintiff filed an inmate grievance regarding the search of his cell.

On May 21, 2015 and May 28, 2015, Gonzalez filed two retaliatory Rule Violation Reports (RVR) against Plaintiff regarding the May 20, 2015 escort. Gonzalez accused Plaintiff of destroying state property and willfully resisting and delaying a peace officer in the performance of his duties.

On May 28, 2015, June 15, 2015, and June 18, 2015, Gonzalez attempted to lure Plaintiff out of his cell to be attacked during the night shift, and Plaintiff was unable to exit his cell for shower on these dates.

On June 23, 2015, Gonzalez intimidated/threatened use of force against Plaintiff stating, "Do you want a problem! Make sure you spell my name correct, it won't be the first time I've been to court!" On this same date, Plaintiff requested that different officers escort him from library to 4A2L.

On June 24, 2015, Defendants Navarro and Gonzalez threatened to serve Plaintiff contaminated food.

On June 25-June 28, July 2, July 12, July 21, and July 23, 2015, Gonzalez renewed his food poisoning threat stating, "You haven't seen anything yet, I haven't even started yet, this is only the beginning!"

On June 28, 2015, Gonzalez told Plaintiff to prepare for the RVR hearing, and then told Plaintiff "wait, let me go see of the Lt. wants to deal with this shit." Gonzalez falsely told the Lieutenant that he "refused to attend" the hearing. Plaintiff was not allowed to attend the RVR hearing, and Gonzalez posted a disciplinary penalty sign on his cell door and took his television.

On June 29-30, 2015, Defendants Gonzalez and Navarro disciplined Plaintiff outside of the disciplinary process by extending his penalty absent authorization of a disciplinary order.

On July 7, 2015, Gonzalez threatened to pepper spray Plaintiff in the face when Plaintiff was transported from the law library to his cell unit.

///

On July 21, 2015 and July 23, 2015, Defendants Navarro and Gonzalez repeatedly threatened to serve Plaintiff contaminated food.

On September 5, 2015, Defendant Gonzalez stood at the Plaintiff's cell door and stated: "You have an 'R' suffix in your file right? What does the 'R' stand for? You are a sex-offender. My job here is to make the life of pieces of shit like you miserable!"

On September 8, 2015, Gonzalez attempted to lure Plaintiff out of his cell to subject him to an assault/battery, and when Plaintiff declined, Gonzalez stated: "That's too bad because it was going to be a long trip to nowhere!" On this same date, Plaintiff wrote an emergency plea for help to the sergeant and the sergeant agreed to move Plaintiff to a different building.

On January 23, 2016, Gonzalez threatened to have Plaintiff assaulted once he was released from segregation. Gonzalez has a history of conspiring and targeting prisoners for violent attacks and retaliation.

On September 27, 2016, under the auspice of enforcing CDCR feeding regulation and to further the conspiracy, Navarro gave Plaintiff contaminated food. The following day, Plaintiff suffered severe abdominal pain, dysentery, and vomiting from consuming the food.

On October 6, 2016, Defendant Sexton directed staff not to amend or correct any of the false or incomplete safety/enemy placement case factor information in Plaintiff's central file and directed Defendant McCabe to dispute all of the injuries Plaintiff reported to the medical department.

On December 29-30, 2016, to further the conspiracy and under the auspices of enforcing CDCR feeding regulations, Navarro carried out the earlier threats and issued Plaintiff food heavily laden-tainted with odorless, nonvisible, and unknown contaminated substances. After consuming the food Plaintiff received from Navarro, he suffered nausea, vomiting, dysentery, acute pain in stomach and spleen, and swollen and hyper pigmented feet and ankles. Plaintiff reported the food poison exposure to custody, food service, and medical staff on January 1, 5, and 27, 2017. Plaintiff has suffered serious bodily injury inflicted by Navarro for approximately eight months.

In March 2017, Defendant Allison agreed to place Plaintiff in the general population where Defendants Navarro and Gonzalez were posted. Defendant Allison had a meeting with Defendants Moak and Sexton to circumvent the Ashker settlement agreement terms and amend the CDCR

prisoner placement regulations without appropriate notice. Defendant Allison also directed Defendants Moak and Sexton to disallow Plaintiff to attend the DRB placement review, and to erase all of Plaintiff's safety concerns following the Ashker monitoring conclusion thereby subjecting Plaintiff to attack by other prisoners.

In March 2017, Defendant Moak directed his subordinate counselors to conduct the pre-DRB interview without recording any of Plaintiff's statements, to not document any of Plaintiff's placement safety enemy concerns, to tell Plaintiff that he would be attending his DRB review, and to submit the false interview report as a chrono disputing Plaintiff's safety placement restriction in support of Defendant Sexton's actions. Defendant Allison signed over placement jurisdiction to Defendant Sexton.

In March 2017, Defendant McCabe directed his subordinate healthcare staff to refer Plaintiff to the mental health department for any reports of employee attacks or contamination of food and disputed Plaintiff's injuries stemming from exposure to contaminated food.

On June 26, 2017, Plaintiff submitted an inmate appeal. On June 29, 2017, a video interview was conducted.

### C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing

Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### D. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The inmate must complete all three formal levels of review. The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

7

Cal. Code Regs. tit. 15, § 3084.2(a) (3-4).

1. Inmate Classification

Each prison facility has a classification committee that is responsible for assessing inmates' housing needs. Cal. Code Regs., tit. 15, § 3376(b), (c)(1)-(3), (d). Classification issues also can be referred, through the institution head, for resolution at the headquarters level. Id. at § 3376.1. When this occurs, CDCR's Departmental Review Board (DRB) makes the final classification determination. Id. The DRB is a committee that meets at the call of the chairperson, and issues its decisions in writing. Id.

The CDCR does not require administrative exhaustion for limited categories of issues because the decision already is subject to independent review at the department-director level; among those are classification decisions by the DRB. Cal. Code Regs. tit. 15, § 3084.6(c)(6) ("issue[s] . . . subject to a department director level review independent of the appeal process such as a Departmental Review Board decision . . . [are] not appealable."); see also Cal. Code Regs. tit. 15, § 3376.1 ("The DRB decision … is not appealable . . . )

**E.    Analysis of Defendants' Motion**

Defendants Allison and Moak argue that the conspiracy claims against them are not exhausted and the Court should enter judgment on the pleadings on the claims. More specifically, Defendants argue that Plaintiff concedes he did not file a grievance concerning Director Allison and Classification Chief Moak's alleged conduct. (Second Am. Compl. at p. 19 n.77, 21 n.88, ECF No. 26.)[1]

Plaintiff contends that "all decisions-actions of any member of DRA are non appealable" citing section 3376.1. (Pl.'s Opp'n at 3.) Plaintiff further argues that a "nexus" exists because in all CDCR classification hearing a pre-hearing decision is involved where officials agree on what decision will be made. (Id.) Plaintiff contends it does not matter if the decision is two months prior because "the nexus between plan and action is unbroken." (Id.)

---

[1] References herein to page numbers are to the Court's ECF pagination headers.

8

1    Contrary to Plaintiff's contention, his conspiracy claim predates, and is distinct from, any
2    claim regarding the DRB's classification decision.  As previously stated, DRB decisions are excluded
3    from the grievance process because they are separately subject to a high-level administrative review.
4    Cal. Code Regs. tit. 15, § 3084.6(c)(6).  However, there is no exception for a conspiracy claim, which
5    predates the DRB decision.  Indeed, section 3084.6(c)(6) specifically applies to "issues [] subject to a
6    department director level review independent of the appeal process such as a Departmental Review
7    Board decision …," which does not apply to a conspiracy claim here.  In contrast to the DRB decision,
8    Plaintiff's conspiracy allegations were not otherwise subject to administrative review, and prison
9    officials never had a change to investigate or address the conspiracy allegations because Plaintiff did
10   not put the prison on notice through the prison grievance process.  Further, Plaintiff cannot attempt to
11   carve out a new exception to the PLRA exhaustion requirement by arguing that there is an "unbroken"
12   nexus between the alleged conspiracy and the DRB's review and decision two months later.  (Opp'n at
13   3.)  However, there is no exception to the PLRA exhaustion mandate and as recently stated by the
14   Supreme Court the only limit "is the one baked into its text."  Ross v. Blake, 136 S.Ct. at 1857, 1867
15   ("mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing
16   judicial discretion").  There is no "nexus" exception.  In addition, contrary to Plaintiff's argument, the
17   CDCR grievance regulations do not exempt the actions of Allison, Moak, or any other individual from
18   the exhaustion requirement simply because they sit on a DRB committee because only "the DRB
19   decision" is exempt.  Cal. Code Regs. tit. 15, § 3376.1.

20   Plaintiff's additional arguments also lack merit.  First, Plaintiff contends that he provided
21   notice of his conspiracy claim by way other than the inmate grievance process.  (Opp'n at 1-2.)
22   However, the law is clear that the PLRA mandates exhaustion in compliance with the prison's
23   grievance process.  Ross v. Blake, 136 S.Ct. at 1854-55; Jones v. Bock, 549 U.S. at 218.
24   Accordingly, based on Plaintiff's concession, his conspiracy claims against Defendants Allison and
25   Moak should be dismissed for failure to exhaust the administrative remedies.  Second, Plaintiff's claim
26   that he was attacked after he filed this action, does not excuse exhaustion prior to filing suit.  Ross v.
27   Blake, 136 S.Ct. at 1852, 1854-55 ("The … PLRA[] mandates that an inmate exhaust … before
28

bringing suit to challenge prison conditions"). Lastly, the merits of Plaintiff's claim is not relevant to exhaustion of administrative remedies. 42 U.S.C. § 1997e(a).

### III.
### RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Allison and Moak's motion for judgment on the pleadings be granted; and
2. The conspiracy claims against Defendants Allison and Moak be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __June 20, 2019__

UNITED STATES MAGISTRATE JUDGE