1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAM DRAKE, | ) Case No.: 1:17-cv-01500-AWI-SAB (PC) |
| Plaintiff, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| v. | ) REGARDING DEFENDANTS' MOTION FOR |
| | ) SUMMARY JUDGMENT |
| SCOTT KERNAN, et al., | ) |
| | ) (ECF No. 88.) |
| Defendants. | ) |
| | ) |
|  _____  | ) |

Plaintiff Sam Drake is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed on June 17, 2020.  (ECF No. 88.)

**I.**

**RELEVANT BACKGROUND**

This action is proceeding on the following claims: (1) retaliatory food poisoning under the First Amendment against Defendants Navarro and Gonzalez; (2) retaliatory food poisoning under the Eighth Amendment against Defendant Navarro; (3) due process violation relating to a RVR hearing under the Fourteenth Amendment against Defendant Gonzalez; (4) conspiracy to set him up for attack by other inmates against Defendants Gonzalez, McCabe, Navarro, and Sexton; (5) for setting him up

1

for attack under the Eighth Amendment against Defendants Allison, Gonzalez, Moak, McCabe, Navarro, and Sexton; and (6) lack of medical treatment provided in response to his complaints of food poisoning against Defendant Dr. McCabe.

On December 19, 2018, Defendants filed an answer to the second amended complaint.

On December 27, 2018, the Court issued the discovery and scheduling order.

As previously stated, on May 13, 2019, Defendants Allison and Moak filed a motion for judgment on the pleadings claiming the conspiracy claim against them is unexhausted on the face of the complaint.  Plaintiff filed an opposition on May 24, 2019, and Defendants filed a reply on June 10, 2019.

On June 21, 2019, the undersigned issued Findings and Recommendations recommending that Defendants' motion for judgment on the pleadings be granted.  (ECF No. 58.)  The Findings and Recommendations were adopted in full on August 26, 2019, and the conspiracy claims against Defendants Allison and Moak were dismissed, without prejudice, for failure to exhaust the administrative remedies.  (ECF No. 67.)

On December 18, 2019, the Court issued an amended scheduling order.  (ECF No. 82.)

On December 27, 2019, the Court granted Defendants' request to modify the scheduling order.  (ECF No. 84.)

On May 12, 2020, the Court granted Defendants' request to extend the deadline to file an exhaustion-related motion for summary judgment.

As previously stated, on June 17, 2020, Defendants filed the instant exhaustion-related motion for summary judgment.  (ECF No. 88.)  Plaintiff filed an opposition on October 14, 2020, and Defendants filed a timely reply on January 22, 2021.  (ECF Nos. 96, 104.)

**II.**

**LEGAL STANDARD**

**A.    Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

2

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory unless unavailable.  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The failure to exhaust is an affirmative defense, and the defendant or defendants bear the burden of raising and proving the absence of exhaustion.  Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166.  Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. Id.

**B.    Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position,

whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).  "The evidence must be viewed in the light most favorable to the nonmoving party."  Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

Initially, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  However, the ultimate burden of proof on the issue of administrative exhaustion remains with the defendant.  Id.  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

### III.

### DISCUSSION

### A.    Summary of CDCR's Administrative Appeal Process[1]

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

---

[1] On March 25, 2020, the grievance procedure outlined in § 3084.1, et seq., was repealed effective June 1, 2020, as an emergency by the CDCR pursuant to Penal Code § 5058.3. See CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020).  However, the parties do not dispute that the events alleged in the complaint took place before the repeal took effect.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602.  Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4).  Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed.  Id.  If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief.  Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d).  Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal.  Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b).  When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits.  Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e).  If an

5

inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects.  Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1).  If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision.  Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).

**B.     Summary of Relevant Factual Allegations of Plaintiff's Complaint**

In 1994, Plaintiff was remanded to the custody of CDCR.  In June 2000, Plaintiff was a witness in a United States District Court and testified against CDCR and Corcoran State Prison corruption among prison staff.

Defendants Navarro, Gonzalez, Allison, Moak, Sexton and McCabe agreed on a course of treatment to injure and oppress Plaintiff.

On April 6, 2015, Defendants Navarro and Gonzalez conspired to murder and inflict serious bodily injury on Plaintiff.  Plaintiff was randomly moved from the security housing unit at Corcoran State Prison 4A facility to 4A2L where Defendants Navarro and Gonzalez were posted.

On April 6, 2015 through May 2015, Plaintiff wrote requests complaining about the lack of in-cell air circulation, bedding, linen, and sink sanitation.  Plaintiff did not receive a response to his requests.

On April 23, 2015, under the auspice of enforcing CDCR security check, Gonzalez stated in front of general population inmates that Plaintiff was a "SNY" "piece of shit" "rat" who has "been 'snitching' on us to the sergeant."

On May 5, 2015, Navarro called Plaintiff a "snitch" in front of general population inmates and stated: "Drake, in cell #48, keeps snitching on us [guards] to the sergeant and captain…writing complaints," and "if you guys (e.g. black inmates) don't handle it, we are going to handle it!"  In addition, Gonzalez called Plaintiff a "snitch" "SNY," "piece of shit" in front of the general population inmates.

On May 20, 2015, Defendants Gonzalez and Navarro took Plaintiff from cell #48 to a hallway holding cage/cell to collect a urine sample from Plaintiff under the threat of discipline.  Plaintiff told Defendants Gonzalez and Navarro that he "filed a 602 against the Warden for his wasting human-resources by unnecessarily repeatedly drug-testing [him], a non-user because it is harassment."

Defendant Gonzalez, without notice, left the 2 on one 1 escort, after hearing Plaintiff speak of having filed a staff complaint.  After Plaintiff provided a urine sample and was placed in a rotunda holding cage, Plaintiff asked Navarro, "Why am I not being taken back to my cell?" Navarro told Plaintiff "you have to wait here until my partner Gonzalez is done searching your cell."   Gonzalez remained in Plaintiff's cell for approximately thirty to forty minutes, ransacking Plaintiff's property then returned to the rotunda with two fifty-gallon trash bags and refused to disclose the contents.  When Plaintiff asked what items were taken, Gonzalez stated, "you had a lot of trash! Just stand there and shut the fuck up! I read your legal papers, and what you write isn't worth shit! You are not on my level yet, I know exactly what to say in court to win!"  Gonzalez further stated, "Oh, if you want to see 'personal,' I will get you struck-out! I have already gotten four prisoners life sentenced and I'll be glad to make you the fifth!"  Gonzalez then told Plaintiff to "turn around and cuff-up…if you so much as look at me, I will slam you onto the floor head first!"

On May 21, 2015, Gonzalez threatened to charge Plaintiff for the lost state linen taken from a different prisoner's cell on May 20, 2015, if Plaintiff filed an inmate grievance regarding the search of his cell.

On May 21, 2015 and May 28, 2015, Gonzalez filed two retaliatory Rule Violation Reports (RVR) against Plaintiff regarding the May 20, 2015 escort.  Gonzalez accused Plaintiff of destroying state property and willfully resisting and delaying a peace officer in the performance of his duties.

On May 28, 2015, June 15, 2015, and June 18, 2015, Gonzalez attempted to lure Plaintiff out of his cell to be attacked during the night shift, and Plaintiff was unable to exit his cell for shower on these dates.

On June 23, 2015, Gonzalez intimidated/threatened use of force against Plaintiff stating, "Do you want a problem! Make sure you spell my name correct, it won't be the first time I've been to court!"  On this same date, Plaintiff requested that different officers escort him from library to 4A2L.

On June 24, 2015, Defendants Navarro and Gonzalez threatened to serve Plaintiff contaminated food.

On June 25-June 28, July 2, July 12, July 21, and July 23, 2015, Gonzalez renewed his food poisoning threat stating, "You haven't seen anything yet, I haven't even started yet, this is only the beginning!"

On June 28, 2015, Gonzalez told Plaintiff to prepare for the RVR hearing, and then told Plaintiff "wait, let me go see if the Lt. wants to deal with this shit."  Gonzalez falsely told the Lieutenant that he "refused to attend" the hearing.  Plaintiff was not allowed to attend the RVR hearing, and Gonzalez posted a disciplinary penalty sign on his cell door and took his television.

On June 29-30, 2015, Defendants Gonzalez and Navarro disciplined Plaintiff outside of the disciplinary process by extending his penalty absent authorization of a disciplinary order.

On July 7, 2015, Gonzalez threatened to pepper spray Plaintiff in the face when Plaintiff was transported from the law library to his cell unit.

On July 21, 2015 and July 23, 2015, Defendants Navarro and Gonzalez repeatedly threatened to serve Plaintiff contaminated food.

On September 5, 2015, Defendant Gonzalez stood at the Plaintiff's cell door and stated: "You have an 'R' suffix in your file right?  What does the 'R' stand for?  You are a sex-offender.  My job here is to make the life of pieces of shit like you miserable!"

On September 8, 2015, Gonzalez attempted to lure Plaintiff out of his cell to subject him to an assault/battery, and when Plaintiff declined, Gonzalez stated: "That's too bad because it was going to be a long trip to nowhere!"  On this same date, Plaintiff wrote an emergency plea for help to the sergeant and the sergeant agreed to move Plaintiff to a different building.

On January 23, 2016, Gonzalez threatened to have Plaintiff assaulted once he was released from segregation.  Gonzalez has a history of conspiring and targeting prisoners for violent attacks and retaliation.

On September 27, 2016, under the auspice of enforcing CDCR feeding regulation and to further the conspiracy, Navarro gave Plaintiff contaminated food.  The following day, Plaintiff suffered severe abdominal pain, dysentery, and vomiting from consuming the food.

On October 6, 2016, Defendant Sexton directed staff not to amend or correct any of the false or incomplete safety/enemy placement case factor information in Plaintiff's central file and directed Defendant McCabe to dispute all of the injuries Plaintiff reported to the medical department.

On December 29-30, 2016, to further the conspiracy and under the auspices of enforcing CDCR feeding regulations, Navarro carried out the earlier threats and issued Plaintiff food heavily laden-tainted with odorless, nonvisible, and unknown contaminated substances. After consuming the food Plaintiff received from Navarro, he suffered nausea, vomiting, dysentery, acute pain in stomach and spleen, and swollen and hyper pigmented feet and ankles. Plaintiff reported the food poison exposure to custody, food service, and medical staff on January 1, 5, and 27, 2017. Plaintiff has suffered serious bodily injury inflicted by Navarro for approximately eight months.

In March 2017, Defendant Allison agreed to place Plaintiff in the general population where Defendants Navarro and Gonzalez were posted. Defendant Allison had a meeting with Defendants Moak and Sexton to circumvent the Ashker settlement agreement terms and amend the CDCR prisoner placement regulations without appropriate notice. Defendant Allison also directed Defendants Moak and Sexton to disallow Plaintiff to attend the DRB placement review, and to erase all of Plaintiff's safety concerns following the Ashker monitoring conclusion thereby subjecting Plaintiff to attack by other prisoners.

In March 2017, Defendant Moak directed his subordinate counselors to conduct the pre-DRB interview without recording any of Plaintiff's statements, to not document any of Plaintiff's placement safety enemy concerns, to tell Plaintiff that he would be attending his DRB review, and to submit the false interview report as a chrono disputing Plaintiff's safety placement restriction in support of Defendant Sexton's actions. Defendant Allison signed over placement jurisdiction to Defendant Sexton.

In March 2017, Defendant McCabe directed his subordinate healthcare staff to refer Plaintiff to the mental health department for any reports of employee attacks or contamination of food and disputed Plaintiff's injuries stemming from exposure to contaminated food.

On June 26, 2017, Plaintiff submitted an inmate appeal. On June 29, 2017, a video interview was conducted.

Plaintiff was allegedly attacked by inmates on December 15, 2017 and in March 2018.

**C.      Statement of Undisputed Material Facts[2]**

1.      Plaintiff was a state prisoner when he brought suit.  (Compl. at 1, ECF No. 1.)

2.      Plaintiff brought this suit on September 26, 2017.  (Compl. at 42.)

3.      This action concerns Plaintiff's incarceration at California State Prison, Corcoran. (Second Am. Compl. (SAC) at pp. 4, 6, ECF No. 26.)

4.      Plaintiff admits a grievance procedure was available to Plaintiff as to Defendants Gonzales, Navarro, and McCabe.  (Pl. Opp'n ¶ 4, ECF No. 96.)

5.      Plaintiff contends that grievances COR-16-3255 and COR-17-519 exhaust his claims against Chief Deputy Warden Sexton. (Defs. Ex. J at DEF 265; Ganson Decl. ¶ 2, Ex. N.)

6.      Grievance COR-16-3255 was submitted in June 2016.  (Defs. Ex. D at DEF 42; Ex. J at DEF 265; Declaration of Moseley (Moseley Decl.) ¶ 9(d), Ex. K; Ganson Decl. ¶ 2, Ex. N; SAC at 20, 23.)

7.      Grievance COR-17-519 was submitted in January 2017.  (Defs. Ex. E at DEF 101; Moseley Decl. ¶ 9(e), Ex. K.)

8.      Plaintiff contends that grievances COR-15-4721 and COR-17-519 exhaust his claims against Defendant Navarro.  (Defs. Ex. J at DEF 266; Ganson Decl. ¶ 2, Ex. N.)

9.      Plaintiff contends that grievances COR-15-4721, COR 15-5264, and CSPC5-16-1099 exhaust his claims against Defendant Gonzales.  (Defs. Ex J at DEF 272; Ganson Decl. ¶ 2, Ex. N.)

10.      Plaintiff does not assert that Grievance COR-17-519 exhausts any claim against Defendant Gonzales.  (Defs. Ex J at DEF 272; Ganson Decl. ¶ 2, Ex. N.)

11.      Grievance COR-17-519 does not name Defendant Gonzales or provide notice that he engaged in any misconduct.  (Defs. Ex. E at DEF 101-104; Moseley Decl. ¶ 9(e), Ex. K.)

12.      Grievance COR-5-16-1099 was submitted in February 2016.  (Defs. Ex. C at DEF 30; Moseley Decl. ¶ 9(c), Ex. K.)

13.      Plaintiff contends that grievances COR-HC-17-091994 and COR-HC-18-000425

---

[2] Hereinafter referred to as "UMF".

10

exhaust his claims against Defendant Dr. McCabe.  (Defs. Ex. J at DEF 271; Ganson Decl. ¶ 2, Ex. N.)

14. Plaintiff brought suit before he received a response to COR-HC-17-091994 at the final level of review, and before the September 29, 2017 deadline for the prison's response came due. (Defs. Ex. G (COR-HC-17-091994) at 155 (stamped "RECEIVED HCCAB JUL 31 2017"), Ex. J (Response to Moak Interrogatories Nos. 5–6) at DEF 271 (admitting he did not exhaust the administrative process before filing suit); Ex. M (Henderson Decl. ¶ 8(a)), Ex. N (Ganson Decl. ¶ 2)

### D.   Analysis of Defendants' Motion

Defendants argue that Plaintiff failed to comply with the Prison Litigation Reform Act's mandatory exhaustion requirement as to his claims against former CDCR Director Allison,[3] Classification Chief Moak, Chief Deputy Warden Sexton, Officer Navarro, and Chief Physician and Surgeon Dr. McCabe, and these Defendants should be dismissed from the action.  Defendants submit that the Court should allow this action to proceed only on the First and Eighth Amendment claims exhausted against Officer Gonzalez, based on the alleged retaliatory harassment from April 6, 2015 until January 23, 2016.

In opposition, Plaintiff argues that he exhausted all of the administrative remedies that were "available" to him, but he was prevented from doing so do because of prison officials neglect and delay in responding to his appeals.  Plaintiff also argues that certain grievances should have been treated as "emergency" rather than processed within the normal time frames.

### 1.   Eighth Amendment Claims Against Defendants Allison and Moak

Defendants argue Plaintiff's sole remaining claim against Director Allison and Classification Chief Moak— that these high-ranking officials violated the Eighth Amendment by purposefully manipulating his transfer to the facility where Defendants Gonzalez and Navarro were assigned so that they could solicit inmates to attack him — is unexhausted. (SAC p. 18 ¶¶ 71, 73-74, p. 27 ¶ 24; Screening Order 6–7, ECF No. 28.)

///

///

---

[3]  Allison is currently CDCR's acting undersecretary.

a.      **Exemption of Written Board Decision from Administrative Appeals Process**

The Department Review Board's written classification decisions, such as the decision relinquishing jurisdiction over Drake's housing to Corcoran prison (e.g. the decision to "sign[] over placement jurisdiction to Defendant Sexton"), are excluded from the administrative-exhaustion process because they are subject to a high-level administrative review. (SAC at pp. 18-19 ¶¶ 74-76, p. 20 ¶¶ 84-85; Cal. Code Regs. tit. 15, §§ 3084.6(c)(6), 3376; see also F&R Grant MJOP 8–9, ECF No. 58.)

However, Defendants argue that Plaintiff's Eighth Amendment claim is not grounded in the Board's written classification decision. Indeed, prisoners have no freestanding constitutional right to any particular security classification or housing assignment. Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997), Meachum v. Fano, 427, U.S. 215, 224–25 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976). Rather, Defendants contend that Plaintiff's Eighth Amendment claim is grounded in different facts — his alleged intentional transfer to a specific facility to enable two officers to solicit his attack. (SAC at p. 18 ¶¶ 71, 73-74.) Defendants reason that since these allegations extend well beyond the Board's written decision relinquishing authority over Plaintiff's housing assignment, Plaintiff was required to exhaust the prison's administrative process before bringing this claim. See Ross, 136 S. Ct. at 1853, 1859 (requiring exhaustion of all available administrative remedies).

The Court does not find Defendants' argument persuasive. Based on the applicable regulations, the decisions of the DRB which serve as the director's level decision are binding and conclude the inmate's departmental administrative remedy, and Defendants provide no authority to the contrary. Cal. Code Regs., tit. 15, § 3376.1; Brown v. Valoff, 422 F.3d 926, 930 (9th Cir.2005), citing Cal. Code Regs., tit. 15, § 3084.1(a). Contrary to Defendants' argument, Plaintiff's deliberate indifference claim against them involves their DRB classification decision and subsequent unsafe housing placement. Plaintiff's claim specifically involves Defendants Allison and Moak's decision to rescind placement jurisdiction by way of the DRB decision. In addition, Defendants have not demonstrated that Plaintiff was placed on notice of any need to further appeal the DRB's decision. See Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004) (inmate does not procedurally default, so as to fail to exhaust where not on notice of need to grieve a particular form of relief); Jones v. Plessas, No. 2:09-

cv-2133 KJM KJN P, 2011 WL 5593038 at *1 (E.D. Cal. Nov. 16, 2011), citing <u>Brown</u>, 422 F.3d at 934–35 (a prisoner need not exhaust further levels of review once he has been reliably informed by an administrator that no more remedies are available).  Accordingly, based on the record before it, the Court finds that Defendants Allison and Moak have not met their burden of proof in demonstrating that Plaintiff failed to exhaust the claims against them.

> 2. <u>Claims Against Defendant Chief Deputy Warden Sexton</u>

Defendants argue that Plaintiff failed to exhaust his conspiracy and Eighth Amendment claims against Defendant Chief Deputy Warden Sexton.  Plaintiff contends that, on November 15, 2015 and March 20, 2016, Defendant Sexton condoned "torture attacks" by Defendants Navarro and Gonzalez. (SAC at p. 20 ¶ 86, p. 23 ¶ 8.)  Plaintiff further contends that, on October 6, 2016, Defendant Sexton directed Defendant Dr. McCabe to dispute all injuries that Plaintiff reported had been caused by staff, and directed custody staff not to correct the safety and enemy information in Plaintiff's prison file. (SAC at p. 20 ¶ 86, p. 23 ¶ 9.)  Then, in March 2017, Defendant Sexton allegedly conspired with Defendants Allison and Moak to relinquish the Board's placement jurisdiction so that Defendants Navarro and Gonzalez could solicit his attack.  (SAC at pp. 18-19, ¶¶ 71, 73-76.)  Plaintiff also alleges that he was given the option to transfer to a general population (GP) yard after the Board's placement jurisdiction was rescinded in September 2017, even though Sexton acknowledged that he would not be safe there.  (<u>Id.</u>)  Plaintiff was allegedly attacked by inmates on December 15, 2017 and in March 2018.  (SAC at p. 18 ¶ 73, p. 25 n.8, p. 26 ¶ 24, n. 9-10.)

Plaintiff identified Grievance Nos. COR-16-3255 and COR-17-519 as grieving his claims against Defendant Sexton.[4]  (UMF 5.)

///

///

///

///

---

[4] The Court notes that Grievance No. COR-4-17-5267 mentions Defendant Sexton; however, the grievance does not concern the allegations against Defendant Sexton herein, but rather grieves a different conspiracy and failure to protect Plaintiff from the actions of correctional supervisors who are not parties in this action.  (Defs. Ex. J at DEF 265 (Response to Allison Interrogatory No. 4); Defs. Ex. F.)

13

### a.      Grievance No. COR-16-3255

Grievance COR-16-3255 was submitted in June 2016, and Defendant argues it predates Plaintiff's claims against Defendant Sexton, with the exception of the alleged actions on November 15, 2015 and March 20, 2016 that condoned "torture attacks" on Plaintiff by Defendants Navarro and Gonzalez.

In Grievance COR 16-3255, Plaintiff alleged that his central file contained inaccurate/incomplete critical case factors relating to his housing and cell safety concerns despite his request to amend the information.  (Defs. Ex. D.)

The appeal was denied at the first level of review because it was determined that the Board already had taken Plaintiff's safety concerns into consideration and his single-cell SHU housing had been continued until the next Board review.  (Defs. Ex. D.)  It was further determined that Plaintiff's file was accurate and complete, and Plaintiff's request to delete the gang information was denied.  (Id.)

Plaintiff appealed to the second level of review.  (Defs. Ex. D.)  Defendant Sexton denied the appeal at the second level on October 7, 2016.  (Id.)  Defendant argues this grievance could not have exhausted any claims against Defendant Sexton because there is nothing in the factual content of this appeal to the third level of review that would have alerted prison officials to Plaintiff's contention that Defendant Sexton conspired against him, acted with deliberate indifference, or directed staff not to correct misinformation in his file.  And, even assuming Plaintiff had later tried to add such claims (which the Court finds he did not), administrative remedies are not exhausted as to any new issue or person later named that was not included in the originally submitted appeal. See Cal. Code Regs. tit. 15, § 3084.1(b).

Based on a review of the original grievance and the second level response thereto, the Court finds this grievance is sufficient to exhaust Plaintiff's claim that in October 2016, Defendant Sexton directed Defendant Dr. McCabe to dispute all injuries that Plaintiff reported had been caused by staff, and directed custody staff not to correct the safety and enemy information in Plaintiff's prison file. In Reyes v. Smith, 810 F.3d 654, 656, 658 (9th Cir. 2016), the Ninth Circuit held that an inmate satisfies the PLRA exhaustion requirement "if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process."

Although Reyes failed to name two of the Defendants, because they were members of the identified "pain committee," prison officials were put on notice of the nature of the wrong alleged in the action (namely, that he was wrongly denied pain medication).  The Court found that because the prison had sufficient notice and the grievance was addressed on the merits at each level of review, the exhaustion requirement was satisfied.  In applying the holding in Reyes, the Ninth Circuit held that a Warden's review of an appeal at the second level was sufficient to meet the PLRA exhaustion requirement.  See Blacher v. Johnson, 651 Fed. App'x 575 (9th Cir. 2016).  In Blacher, the warden reviewed the inmate grievance at the second level, but was not named in the initial grievance.  The district court found exhaustion was not satisfied because the warden was not named in the initial grievance as required by CDCR regulations.  See Blacher v. Johnson, No. 1:12-cv-00159-GSA-PC, 2014 WL 790910 (E.D. Cal. Feb. 26, 2014) (quoting Cal. Code Regs. tit. 15, 3084.1(b) (2011)).  The Ninth Circuit reversed, finding that pursuant to Reyes the inmate's failure to comply with prison regulations did not render the claim unexhausted because he received a response at the third level informing him the remedies were exhausted.  Blacher v. Johnson, 651 Fed. App'x at 576.

The reasoning set forth in Blacher applies here.  In appealing the second level response, Plaintiff specifically stated that the second level review was false and the information cited by "CDW (M.S.) was debunked by IGIG staff investigation CSP-SAC," and Plaintiff continued to challenge inaccurate and incomplete information in his central file relating to his housing placement.  (Defs. Ex. D at DEF 042.)  Thus, based on fact that Defendant Sexton was the Chief Deputy Warden, denied the appeal at the second level of review, and the appeal was exhausted to the third level of review which specifically stated that the remedies were exhausted, Plaintiff has met the exhaustion requirements required by the PLRA.  See, e.g., Vaught v. Williams, No. ED CV 17-1693-DOC (E), 2018 WL 462203, at *7 (C.D. Cal. Aug. 21, 2018) ("The policy underlying the PLRA exhaustion requirement would not be served by requiring an aggrieved prisoner to begin a separate, largely duplicative round of administrative appeals every time another administrative reviewer manifests the same type of alleged deliberate indifference to the same type of alleged medical need.")  (citations omitted).  Further, Defendants have not provided and the Court has not found any regulation which specifically addresses how an inmate is to exhaust the administrative remedies as to the official(s) who denied it.

See, e.g., Zapata v. Ducart, No. 17-cv-02557-EMC, 2019 WL 2476685, at *7 (N.D. Cal. June 13, 2019) (explaining how the California "administrative appeals system is confusing (at best) and impossible to use (at worst) for a California prisoner attempting to pursue a grievance against an official based on the official's denial of an inmate appeal.)

However, the factual content of this appeal is not sufficient to grieve Plaintiff's claim that in November 2015 and March 2016, Defendant Sexton condoned "torture attacks" by Defendants Navarro and Gonzalez.  Nor is this grievance sufficient to grieve Plaintiff's claim in March 2017, Defendant Sexton allegedly conspired with Defendants Allison and Moak to relinquish the Board's placement jurisdiction so that Defendants Navarro and Gonzalez could solicit his attack.

Accordingly, the Court finds that Plaintiff has exhausted his claim that in October 2016, Defendant Sexton directed Defendant Dr. McCabe to dispute all injuries that Plaintiff reported had been caused by staff, and directed custody staff not to correct the safety and enemy information in Plaintiff's prison file.

### b.      Grievance No. COR-17-519

Grievance COR-17-519 was submitted in January 2017, which predates Plaintiff's claims that Defendant Sexton conspired with Allison in March 2017 to rescind the Board's transfer control, Sexton rescinded that transfer control in September 2017 to place him on an unsafe yard and solicit his attack, and the alleged December 2017 and March 2018 attacks.  (Defs. Ex. E; See Cal. Code Regs. tit. 15, § 3084.6(b)(1) (anticipated actions cannot be exhausted); Porter v. Nussle, 534 U.S. at 525 (noting goal "of giving prison officials 'time and opportunity to address complaints internally'" before being hauled into federal court).)  Furthermore, this grievance did not put prison officials on notice of his claims against Defendant Sexton.  This grievance involves Plaintiff's claim regarding food contamination; however, Plaintiff's claims against Defendant Sexton do not involve food contamination.  Accordingly, this grievance does not serve to exhaust the claims against Defendant Sexton.

///

///

///

16

1         3.      Claims Against Defendants Navarro and Gonzalez

2         Defendants argue that the grievances identified by Plaintiff do not exhaust any of the claims

3    against Navarro (COR-15-4721, COR-17-519) and do not exhaust all of the claims against Gonzalez

4    (COR-15-4721, COR-15-5264, and COR-5-16-1099).

5         Plaintiff alleges that Defendant Navarro contaminated his food, Defendants Navarro and

6    Gonzalez retaliated against him, conspired to have him assaulted, and solicited other inmates to assault

7    him, and that Defendant Gonzalez additionally issued retaliatory disciplinary charges and deprived

8    him of due process by precluding him from attending a prison disciplinary hearing.  (Screening Order

9    6–10, ECF No. 28.)[5]

10        **a.      Grievance No. COR-15-4721**

11        This grievance addresses only Plaintiff's allegations that the loss of television privileges was

12   improperly extended and that Defendant Gonzales threatened him with pepper spray on July 7, 2015,

13   "by waiving his canister … around like a gun" during an escort while Plaintiff sat behind him in the

14   golf cart.  (Defs. Ex. A.)  However, these allegations, do not give rise to Plaintiff's constitutional

15   claims.  Indeed, mere threats of being pepper sprayed does not give rise to a claim for relief.  See Gaut

16   v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that "a mere naked threat" of bodily harm does

17   not violate the constitution "and it trivializes the Eighth Amendment to believe a threat constitutes a

18   constitutional wrong.")  Further, the mere fact that the loss of television privileges was improperly

19   extended does not give rise to Plaintiff's due process claim against Defendant Gonzalez.  Rather,

20   Plaintiff's due process claim against Gonzalez is based on the fact that he allegedly refused to allow

21   Plaintiff to attend the hearing on the rules violation.  Thus, merely stating that the loss of his television

22   privileges were extended does not give notice of the alleged due process violation, i.e., the failure to

23   allow Plaintiff to be present at the rules violation hearing.  Accordingly, this grievances does not

24   grieve any of the claims against Defendants Gonzalez or Navarro.

---

[5] Defendants correctly note that although the screening order includes Gonzales in the Eighth Amendment food-contamination claim, the allegations in the second amended complaint include him only in the threats to contaminate Plaintiff's food which do not give rise to cognizable claim under the Eighth Amendment.  Therefore, the Court finds that this action does not proceed against Defendant Gonzales on Plaintiff's food-contamination claim under the Eighth Amendment.  Rather, the alleged threats to contaminate Plaintiff's food relate only to the retaliation claim against Defendant Gonzales.

**b.     Grievance No. COR-17-519**

Defendants argue this grievance did not indicate that Navarro had intentionally singled out Plaintiff or served him food that was heavily laden with contaminates.

Contrary, to Defendant Navarro's argument, a plain reading of this grievance and the first level response thereto demonstrates that Plaintiff grieved sufficient facts to place the prison on notice that Plaintiff alleged Navarro poisoned/contaminated his food.  (Defs. Ex. A at DEF 103 ("I was adversely affected with physical pain in my stomach and spleen followed by physiological sign of viral injury following consumption of food handled and served by guard G. Navarro Sept. 27, 2016, and Dec. 29-30, 2016…").)  In addition, the first level response specifically states, "You contend that you suffered immediate viral injury or food poisoning after being serve[d] food by Correctional Officer G. Navarro on September 27, 2016, December 29, 2016 and December 30, 2016.  You also contend that this viral injury or food poisoning is the result of in-adequate supervision and sanitation of the food serving areas; in direction violation of the California Code of Regulation (CCR) Title 15 §3052."  (Defs. Ex. E at DEF 105.)  Based on a reading of the grievance and the response thereto, Plaintiff sufficiently notified the prison of the nature of his complaint and provided sufficient details to remedy it.  See Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016) (as a general matter, to satisfy the PLRA exhaustion requirement, a prisoner's grievance must "alert[ ] the prison to the nature of the wrong ... and provide sufficient information to allow prison officials to take appropriate responsive measures.") (citation and internal quotation omitted);  see also Jones v. Bock, 549 U.S. at 219 (The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.");  McCain v. Peters, 678 F. App'x 534 (9th Cir. 2017) ("failure to include a particular legal theory or failure to identify each named defendant in ... grievances is not a valid basis for concluding that [a prisoner] did not exhaust administrative remedies").  Therefore, the Court rejects the argument that this grievance does not serve to exhaust Plaintiff's claim against Defendant Navarro regarding the food contamination.

**c.     Grievance Nos. COR-5-15-5264 and COR-5-16-1099**

In Grievance No. COR-5-15-5264, Plaintiff alleged that Defendant Gonzalez retaliated against him and engaged in ongoing harassment and threats aimed at Plaintiff, including a threat of force on

September 2, 2015, a threat to call "man down" and have Plaintiff extracted from his cell, name

calling on September 8, 2015, and repeatedly labeled him a snitch and child molester using gestures

and words to the inmates housed in adjacent cells.[6]  This grievance does not allege that Defendant

Gonzales engaged in a conspiracy, threatened to contaminate his food, improperly searched his cell,

issued improper disciplinary charges, or precluded him from attending a disciplinary hearing.  Further,

this grievance was submitted in September 2015, and therefore it predates by at least two years the

alleged December 2017 and March 2018 assaults.  (Defs. Ex. B.)

       In Grievance No. COR-5-16-1099, Plaintiff alleged that Defendant Gonzales made death

threats against him.  On January 23, 2016, Gonzales specifically stated that he would himself, or have

other general population inmates "brutally attack-kill" him.  Plaintiff stated that Gonzales was recently

notified that a prior staff complaint was denied and he "hates" Plaintiff for filing the previous

complaint.  (Defs. Ex. C at DEF 028.)  This grievance is devoid of Plaintiff's allegations that

Defendant Gonzales engaged in a conspiracy, threatened to contaminate his food, searched his cell,

improperly issued disciplinary charges, or precluded him from attending a disciplinary hearing.  (Defs.

Ex. C at DEF 030-033.)  In addition, this grievance, which was submitted in February 2016, also

predates by almost two years Plaintiff's claims alleging December 2017 and March 2018 assaults.

Cal. Code Regs. tit. 15, § 3084.6(b)(1) (anticipated actions cannot be exhausted).  Consequently, these

appeal exhaust only Plaintiff's First and Eighth Amendment claims alleging that Defendant Gonzales

engaged in retaliatory conduct from April 6, 2015 through January 23, 2016.

       Accordingly, the Court finds that Plaintiff exhausted only his Eighth Amendment food

contamination claim against Defendant Navarro, and First and Eighth Amendment claims against

Defendant Gonzales related to his retaliatory conduct from April 6, 2015 through January 23, 2016.

       4.    <u>Claims Against Defendant Chief Surgeon Doctor McCabe</u>

       Defendants contend that neither of the two grievances Plaintiff identified (COR-HC-17091994

and COR-HC-18-000425) exhausts his claims against Dr. McCabe.

---

[6] Although in this grievance Plaintiff alleged a "third solicitation of murder" on August 26, 2015, such allegation is not alleged in the operative second amended complaint.

Plaintiff is proceeding on conspiracy and Eighth Amendment claims against Dr. McCabe based on Plaintiff allegations that the doctor, in May and July 2017, did not order the proper tests detect the alleged contaminates Plaintiff had been poisoned with months earlier, and that in January and March 2017, Dr. McCabe directed his subordinate staff to refer Plaintiff to the mental-health department when he reported "conspired employee attacks" of food poisoning. (Screening Order 6–7, ECF No. 28; SAC at p. 21 ¶ 87, p. 24 ¶¶ 11–12.)

a.        Grievance No. COR-HC-17-091994

In this grievance, Plaintiff alleged that the health care department practices failed to provide adequate treatment and testing for his exposure to tainted food.  Plaintiff requested various medical testing, medication, and referrals.  Plaintiff requested that the "CSP Corcoran Chief Medical Officer immediately direct IUM to approve & expedite consult appointments…."  (Defs. Ex. G at DEF 154.)

Although Plaintiff does not name Defendant Dr. McCabe, it is clear that he was part of the health care department and was the Chief Surgeon, and the grievance was reviewed on the merits.  The Court finds the factual allegations of this grievance are minimally sufficient to put the prison on notice of Plaintiff's claim that Defendant Dr. McCabe as part of the health care department did not provide adequate treatment/testing following his alleged exposure to tainted food.  Nonetheless, Defendants correctly argue that Plaintiff did not exhaust this grievance through the Director's level of review until after he filed suit which is insufficient for exhaustion under the PLRA.  Jones v. Bock, 549 U.S. at 211; McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Indeed, Plaintiff's July 27, 2017 appeal to the final level of review was received by the Health Care Correspondence Appeals Branch (HCCAB) four days later, on July 31, 2017, making the prison's deadline for responding September 29, 2017. (Defs.' Ex. G at DEF 155. (stamped "RECEIVED HCCAB JUL 31 2017"); Cal. Code Regs. tit. 15, § 3084.8(c)(3) ("Third level responses shall be completed within 60 working days from the date of receipt").)  This grievance is unexhausted because, when Plaintiff brought suit on September 26, 2017, the prison's deadline for responding had not yet come due. Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017) (considering exhaustion when the complaint is brought, and not at some later date); see also Jamison v. Baillie, No. 2:10-cv-124 KJM-EFB P, 2016 WL 775746, at *5 (E.D. Cal. Feb. 29, 2016) (finding claims were unexhausted where the plaintiff "circumvented the

administrative process" by filing suit before the prison's grievance responses came due); <u>Bontemps v. Salinas</u>, No. 2:12-cv-2185 TLN AC P, 2015 WL 4618621, at *10 (E.D. Cal. July 31, 2015) (holding that later delays in processing are immaterial).

**b.      Grievance No. COR-HC-18-000425**

In this grievance, Plaintiff complained about the lack of adequate treatment he received for the following the alleged December 2017 attack.  (Defs. Ex. H.)

This grievance does not address Drake's claims against Dr. McCabe because it does not provide notice Dr. McCabe engaged in any conspiracy, directed subordinate staff to refer Drake's medical complaints to the mental-health department, or acted with deliberate indifference by refusing to order the proper medical tests.  Rather, this grievance concerns the medical care that Drake received for a fractured orbital bone and other injuries he sustained during the December 2017 attack. (Defs.' Ex. H (COR-HC-18-000425) at DEF 194–201.) Critically, while the operative complaint here mentions this attack, it contains no related allegations against Dr. McCabe. (SAC at pp. 20–21 ¶¶ 86–87 and p. 24 ¶¶ 11–12 (allegations concerning McCabe) *and* p. 26 ¶ 24 and n.9 (allegations regarding the attack).) Thus, this grievance neither addresses nor exhausts any claim in this action.  Furthermore, even if this grievance was sufficient to grieve the claims against Defendant Dr. McCabe, it was not submitted for review until December 2017, three months after Plaintiff filed this action which is insufficient to exhaust under the PLRA.  <u>Jones v. Bock</u>, 549 U.S. at 211; <u>McKinney v. Carey</u>, 311 F.3d at 1199-1201.

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment be granted in part and denied in part as follows:

a.      Denied as to Plaintiff's claims against Defendants Allison and Moak;

b.      Denied as to Plaintiff's claim that in October 2016, Defendant Sexton directed Defendant Dr. McCabe to dispute all injuries that Plaintiff reported had been caused by

staff, and directed custody staff not to correct the safety and enemy information in Plaintiff's prison file;

c.      Denied as to Plaintiff's Eighth Amendment food contamination claim against Defendant Navarro;

d.      Denied as to Plaintiff's claim First and Eighth Amendment claims against Defendant Gonzales related to his retaliatory conduct from April 6, 2015 through January 23, 2016; and

e.      Granted as to all other claims against all other Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**February 11, 2021**__

_____
UNITED STATES MAGISTRATE JUDGE